EMILY E. SMITH *v.* EDSON PINNEY.

*Illegal consideration. Principal and agent.*

If a woman authorize her agent to settle a civil prosecution in her behalf for bastardy, and such agent settle it by taking a note to his principal, the consideration of which is not only the settlement of the civil complaint, but also the execution of a written agreement on the part of the woman not to instigate, or testify in, any criminal prosecution against the defendant, such note is illegal and cannot be enforced, notwithstanding the agent exceeded his authority in making such agreement, and the woman signed the agreement without reading it, and supposing it to be merely a settlement of the civil suit. By accepting the note and putting it in suit, she is held in law to have ratified the acts of her agent.

ASSUMPSIT upon a joint and several promissory note for one hundred and seventy-five dollars, executed by one Pennock, the defendant and one Stewart, and payable to the plaintiff or bearer Plea, the general issue, and trial by jury, at the December Term, 1858,—ALDIS, J., presiding.

It appeared in evidence that the plaintiff commenced a complaint against Pennock for being the father of her bastard child, Pennock having been a married man when the child was begotten ; that the note in question was executed in settlement of this complaint, but that the defendant refused to execute it until the plaintiff and her father, who acted as her agent in settling the bastardy complaint, would execute to Pennock a bond in the penal sum of five hundred dollars, conditioned that the obligors would in no way cause the bastardy complaint to be entered in the county court, or make any complaint in behalf of the State in connection with the begetting of such bastard child, and also that if the bastardy complaint, or any other complaint connected therewith, should be prosecuted against Pennock, the plaintiff would not testify against him in any court whatever. It further appeared that such a bond was executed and delivered to Pennock by the plaintiff and her father, and that in consideration thereof the defendant executed and delivered the note in question to the plaintiff.

The plaintiff then offered testimony tending to show that the bond was handed to the plaintiff by her father, or some one of her family ; that she signed it without reading it ; that she could

have read it if she had wished; but she did not read it, and sup-
posed that the effect of the bond was only to relinquish and settle
the complaint for bastardy, and nothing else; that the defendant
was not present when she signed it; that the father of the plain-
tiff took the bond, and, as her agent, delivered it to the defend-
ant in order to get the note; that the father had no authority to
negotiate as to anything else than the complaint for bastardy,
but was authorized to deliver the bond and get the note. The
evidence so offered was excluded by the court, and upon the
foregoing facts the court directed the jury to sign a verdict for
the defendant.

To the exclusion of the evidence offered, and to the decision
of the court in directing a verdict for the defendant, the plaintiff
excepted.

*T. Gleed*, for the plaintiff.

*Child & Benton*, for the defendant.

BARRETT, J. The plaintiff's counsel concedes that the pro-
visions of the condition of the bond in question constitute such
a compromise or compounding of a crime as to render void any
contract that should be made upon the consideration of said bond.
But it is urged that the evidence that was offered by the plaintiff
and excluded by the court, tended to show a state of facts, which,
as to the plaintiff, would countervail the *prima facie* effect of the
provisions of said condition, and, therefore, that such evidence
should have been admitted.

The plaintiff is seeking, by this suit, to enforce in her own
favor a contract that, as to this defendant, was entered into by
him only in consideration of the illegal provisions in said con-
dition.

To avoid the effect of these provisions she seeks to prove that
when she executed the bond she did not, in fact, know that said
provisions were contained in it, and that she supposed the only
effect of the bond was to settle and discharge the civil prosecution
for bastardy.

The rejected evidence would have tended to show that the

plaintiff's father, as her agent, was authorized by her, at first, only to negotiate and effect a compromise and adjustment of the civil prosecution.

It would also have equally tended to show, that in negotiating and effecting such compromise, and as a part thereof, he in fact negotiated and entered into the illegal provisions in the condition of the bond; and that after it was executed by the plaintiff, he took the bond, and, as her agent, delivered it to the defendant in order to get the note, and was authorized by her thus to do.

By the fact of receiving the note and seeking to enforce it by this suit, the plaintiff, in contemplation of law, ratifies and adopts the acts of her father by virtue of which the note was procured, and makes him her agent for all that he did, as the effective means by which it was procured.

This clear result of an unquestionable principle of law renders it needless to discuss what might be the proper legal view to be taken of the fact that the plaintiff executed the bond without reading it, notwithstanding she had opportunity and might have read it if she had desired so to do, in connection with the further fact that no fraud was practiced upon her in this respect.

For one, I should hesitate to permit the plaintiff to avoid a fatal vice in the contract which constitutes her cause of action, by alleging voluntary ignorance of the terms of another contract to which she is an immediate party, and which constitutes the sole consideration for the contract she is seeking to enforce. I am not aware of any principle of law or morals that would justify it.

We think the county court made a proper disposition of the case, and the judgment is affirmed.